Chief Judge Fuld (dissenting).
I, of course, agree with the court that ‘[1] there is no valid proof that all members of law enforcement agencies * * * who testify are perjurers ” and that ‘ ‘ all policemen should not be singled out as suspect as a matter of law ” (opn., p. 368), for it must be acknowledged that those possessed of drugs or gambling slips not infrequently seek *370 to rid themselves of such incriminating items by attempting to drop them unnoticed when they see a police officer. However, the District Attorney of New York County informs us, in the brief submitted on these appeals, that ‘ ‘ For the last ten years participants in the system of justice — judges, prosecutors, defense attorneys and police officials—have privately and publicly expressed the belief that in some substantial b,ut indeterminable percentage of dropsy cases, the testimony [that a defendant dropped narcotics or gambling slips to the ground as a police officer approached him] is tailored to meet the requirements of search-and-seizure rulings ’’ and “it is very difficult in many [such] cases to distinguish between fact and fiction.”[1]
When so able and dedicated a prosecutor as District Attorney Frank Hogan believes that there is basis for questioning the truthfulness of the testimony in a “ substantial * * * percentage of dropsy cases,” the conclusion seems to me inescapable, as he and counsel for the defendants urge—that the integrity of the judicial process demands that there be a reallocation of the burden of proof. Accordingly, I strongly favor the view expressed by Mr. Hogan’s office that the rule be changed and the burden placed on the People to establish the legality of a search or seizure of evidence in narcotics and gambling prosecutions when made without a warrant.
Underlying the Fourth and Fourteenth Amendments is the basic proposition that “ no man is to be convicted on unconstitutional evidence.” (Mapp v. Ohio, 367 U. S. 643, 657.) In light of the situation as it today exists, the present rule—which imposes upon the accused the burden of proving the illegality of a seizure on a motion to suppress — subverts this principle by making it possible for some defendants to be convicted on evidence obtained in violation of constitutional guarantees. This follows from the fact that a trial judge who is unsure whether the prosecution’s account of the seizure is credible must, nevertheless, resolve his doubt in favor of the People and admit the evidence. To thus increase the likelihood of a conviction on proof of dubious constitutionality must be stamped as highly unrea *371 sonable and unfair. A change in the rule will help assure that a defendant’s constitutional rights will not be violated since, by placing the burden on the People, the judge will be permitted to suppress evidence in cases where, for instance, he finds the testimony of each side evenly balanced on the scales of credibility and is unable to make up his mind as to who is telling the truth.
To the majority’s suggestion that “ principles of stare decisis do not allow a departure from our present rule ” (opn., p. 369), I would but say that, if a court-made rule, in its actual operation, impinges on an individual’s constitutional rights or otherwise offends against concepts of fair dealing, it should be discarded. Stare decisis ‘ was intended, not to effect a ‘ petrifying rigidity, ’ but to assure the justice that flows from certainty and stability.” (Bing v. Thunig, 2 N Y 2d 656, 667.) As already indicated, reappraisal and reconsideration of the existing rule, in the light of experience and objective studies, demonstrate that it is potentially destructive of defendants ’ rights because it does not sufficiently take into account the danger of false testimony. It is noteworthy that commentators[2] and judges[3]—in addition to the New York County District Attorney—have noted the existence of possible fabrication, and the studies which have been made, based on research into arrest files and interviews with law enforcement officials, persuasively negate the court’s charge that this conclusion is based on post hoc ergo propter hoc reasoning ” (opn., p. 368).
Those who recognize the problem and favor a change in the burden of proof rule do not, contrary to the majority’s assertion (opn., p. 368), intend an “ attack on the integrity of our entire law enforcement system.” Bather, their concern is solely to promote adherence to the principles articulated in Mapp v. Ohio (367 TJ.S. 643, supra) and safeguard the rights granted defend *372 ants by that decision. When there is a chance that some defendants are being denied the full protection thus mandated, this court should take action, as best it may, to assure such protection.
In point of fact, the suggested modification of the rule is not without support in the decisions. Thus, Federal courts[4] and the courts of California[5] hold that the prosecution should bear the burden of justifying a warrantless seizure of evidence. And, indeed, our court has already engrafted one exception on the present rule; “ [w]hen a search and seizure is based upon consent, ’ ’ we declared, ‘ ‘ the burden of proof rests heavily upon the People to establish the voluntariness of that waiver of a constitutional right. ’ ’ (People v. Whitehurst, 25 N Y 2d 389, 391; see, to same effect, Bumper v. North Carolina, 391 U. S. 543, 548-549.)
In short, reason and the imperative of judicial integrity, as well as substantial authority, dictate that the burden of proving the lawfulness of a search or seizure should be cast on the People in all narcotics and gambling cases when the search or seizure has been effected without a warrant. To do less, to shift the burden of proof to the People only in the classic dropsy situation, seems to me, as it does to the New York County District Attorney, ‘ ‘ unrealistic. ’ ’ This is so, as he observes, not only because an ‘ ‘ untruthful officer fearing rejection of tailored dropsy testimony could easily shift to the other scenarios which are familiar in narcotics and gambling cases in the lower courts ” but also because “it is the experience of many prosecutors and judges that the problems of credibility and fact-finding raised * * * are not limited to literal dropsy cases * * * but appear in all types of possessory narcotics and gambling cases.”
It follows, therefore, that each of the defendants on the appeals before us — except the defendant in People v. Bryant who voiced no objection to the use of the evidence in question— is entitled to a new hearing on his motion to suppress.
*373 In People v. Brown, People v. Ortiz and People v. Tate: Order affirmed.
Judges Burke, Jasen and Gibson concur with Judge Scileppi ; Chief Judge Fuld dissents and votes to reverse in a separate opinion in which Judges Bergan and Breitel concur.
In People v. Berrios: Judgment affirmed.
Judges Burke, Jasen and Gibson concur with Judge Scileppi ; Chief Judge Fuld dissents and votes to reverse in a separate opinion in which Judges Bergan and Breitel concur.
In People v. Bryant: Judgment affirmed.
Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen and Gibson concur.

. Three different District Attorneys appear on these several appeals. The District Attorney of New York County represents the People in the Bryant and Tate cases, the Kings County District Attorney appears in People v. Brown and People v. Ortiz and the Bronx County District Attorney is in the Berrios case.

. See, e.g., Graham, The Self Inflicted Wound, pp. 136-137; Skolnick, Justice Without Trial, pp. 212-219; Chevigny, Police Abuses in Connection with the Law of Search and Seizure, 5 Crim. L. Bull. 3, 8; Kuh, In-Field Interrogation, 3 Grim. L. Bull. 597, 604; Younger, Constitutional Protection on Search and Seizure Dead?, Trial, Aug./Sept. 1967, p. 41; Note, Police Practices in Narcotics Cases, 4 Col. J. Law & Soc. Prob. 87, passim; see, also, Oaks, Studying the Exclusionary Rule in Search and Seizure, 37 U. Chi. L. Rev. 665, 693-701; Note, Announcement in Police Entries, 80 Yale L. J. 139,16A-165, n.

. See, e.g., People v. McMurty, 64 Mise 2d 63, 65-67; Veney v. United States, 344 F. 2d 542, 543 (per Weight, J., concurring).

. See, e.g., United States v. Nolan, 420 F. 2d 552, 554r-555, cert. den. 400 U. S. 819; United States v. Cleaver, 402 F. 2d 148,151, cert. den. 394 U. S. 966; Williams v. United States, 382 F. 2d 48, 50; see, also, LaFave, Search and Seizure: Course of True Law, 1966 U. Ill. L.F. 255, 347-348; Symposium, Probable Cause: The Federal Standard, 25 Ohio State L. J. 502, 527.

. See, e.g., Abt v. Superior Ct., 1 Cal. 3d 418, 420; People v. Marshall, 69 Cal. 2d 51, 56.